*SUPPRESSED*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

MAR 1 8 2026

**U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. | |
| | ) | |
| LADONNA P. SMITH, | ) | |
| DENNIS L. DOUGLAS, | ) | |
| DEAUN A. FLOWERS, | ) | **4:26CR127 HEA/PLC** |
| PRINCESS T. JONES, and | ) | |
| TOI P. JONES, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

1.    During the offenses described herein, Defendant LADONNA P. SMITH ("SMITH"), DENNIS L. DOUGLAS ("DOUGLAS"), DEAUN A. FLOWERS ("FLOWERS"), PRINCESS T. JONES ("P. JONES"), and TOI P. JONES ("TOI JONES") (collectively "the defendants") stole hundreds of thousands of dollars in federally funded grants intended for the opening and expansion of childcare facilities in the state of Missouri. To steal these funds, the defendants submitted false and fraudulent documents designed to convince the state of Missouri that such funds had been or would be used only for expenses related to opening or expanding childcare facilities. Instead, the defendants used the funds that they took to compensate each other and to purchase personal travel and luxury goods.

At all times material to this Indictment, unless otherwise specified below:

## The Defendants and Associated Entities

2.      Defendants SMITH, DOUGLAS, FLOWERS, P. JONES, and TOI JONES were residents of St. Louis, Missouri, within the Eastern District of Missouri.

3.      Little Precious Angels Childcare 2, LLC ("Little Precious Angels 2") and Little Precious Angels Childcare 3, LLC ("Little Precious Angels 3") were corporations registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, SMITH was the registered agent and organizer of Little Precious Angels 2 and Little Precious Angels 3.

4.      Above and Beyond Playmate Center, LLC ("Above and Beyond") was a corporation registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, DOUGLAS was the registered agent and organizer of Above and Beyond.

5.      Bright Star Academy, LLC ("Bright Star Academy") was a corporation registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, S.P. was the registered agent and an organizer of Bright Star Academy, and Bright Star Academy was organized on or about August 22, 2021. Bright Star Academy did not open or operate a childcare facility in the state of Missouri.

6.      Totta Tots Daycare, LLC ("Totta Tots") was a corporation registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, Totta Tots was organized on or about September 20, 2021, T. JONES was the registered agent of Totta Tots, and FLOWERS was organizer of Totta Tots. Totta Tots did not open or operate a childcare facility in the state of Missouri.

7.      Childhood Memories Daycare and Learning Center, LLC ("Childhood Memories")

2

was a corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, P. JONES was the registered agent and organizer of Childhood Memories.  Childhood Memories operated until in or around October 2020, after which Childhood Memories did not operate a childcare facility in the state of Missouri.

8.      SMITH was the owner of and signatory for Bank of America account number xxxxxxxx3090 in the name of Little Precious Angels Childcare 2, LLC ("Little Precious Angels 2 Bank Account") and JP Morgan Chase account xxxxx8031 in the name of Little Precious Angels Childcare 3, LLC ("Little Precious Angels 3 Bank Account").

9.      DOUGLAS was the owner of and signatory for Bank of America account number xxxxxxxx4242 in the name of Above and Beyond Playmate Center, LLC ("Above and Beyond Bank Account").

10.      T. JONES and FLOWERS were owners and signatories for U.S. Bank account number xxxxxxxx6987 in the name of Totta Tots Daycare, LLC ("Totta Tots Bank Account").

11.      P. JONES was the owner and signatory for Chase Bank account number xxxxxxxxxxx5831 in the name of Childhood Memories Daycare & Learning Center, LLC ("Childhood Memories Bank Account").

### Missouri Child-Care Relief Funds

12.      The Missouri Department of Elementary and Secondary Education ("DESE") administered a program to award Child-Care Relief Funds ("CCRF") to new and existing childcare providers in the State of Missouri.

13.      In or around August 2021, DESE opened an invitation to bid for CCRF awards that were available to prospective childcare providers for the opening of new childcare facilities ("Startup") and to existing childcare providers for the expansion of and upgrades to existing

childcare facilities ("Expansion"). Funds for these Startup and Expansion awards were allocated to the State of Missouri by the federal government in the Coronavirus Response and Relief Supplemental Appropriations Act ("CRRSA"), Pub. L. No. 116-260, 134 Stat. 1182 (2020), and were intended to be used to support childcare programs in Missouri.

14. In order to receive a Startup or Expansion award, childcare providers first submitted an application to DESE. On the application, childcare providers were required to identify the childcare facility's name and location; designate whether the application was for a Startup or Expansion award; and provide a budget detailing how the requested funds would be spent. These CCRF awards could be used for certain types of allowable expenses, such as furniture and equipment, materials and supplies, salaries and benefits, lease and rent, and minor remodeling. Childcare providers applying for Startup awards were required to obtain a childcare license and be in operation by September 1, 2022. Applicants for Expansion awards were required to be licensed and in operation at the time of the application and to have enrolled attendance in the expanded capacity by September 1, 2022.

15. Applications were required to be submitted by an authorized representative of the childcare provider. Childcare providers could authorize a "designee" to submit a CCRF application on behalf of the provider and to correspond with DESE concerning the provider's application.

16. Once an application was approved, DESE notified the childcare provider via email of the CCRF award and the Terms and Conditions of receiving CCRF. Before accepting CCRF awards, childcare providers were required to certify that the provider had fully read the notice of award and accepted the Terms and Conditions, which included the following conditions of payment:

a. "All statements and representations made by you in documents submitted to receive funds, including, but not limited to, applications, invoices, budgets, and receipts, are true and accurate."

b. "You shall notify the Department immediately if, at any time, you discover that any statements or representations made by you to the Department are not true and accurate."

c. "You shall promptly repay any overpayment made by the Department, as directed by the Department."

17. In order to receive CCRF, childcare providers were then required to submit a Request for Funds ("RFF") to DESE, typically via email, identifying the amount of funds requested and how the funds requested would be used for allowable expenses in accordance with the provider's budget. Childcare providers could receive CCRF for not-yet-incurred expenses ("Advanced Payment") or for expenses for which the provider had already paid ("Reimbursement").

18. Advanced Payment funds were intended for expenses that the childcare provider expected to incur within 60 days of the RFF. After receiving Advanced Payment funds, childcare providers were required to submit receipts and documentation to DESE verifying the funds were spent as the provider had requested and in accordance with the provider's budget. Under the Terms and Conditions for Advanced Payment, childcare providers agreed they would return to DESE any advanced funds used for unallowable expenses or not spent within four (4) months of receiving the funds.

19. Under the Terms and Conditions for Reimbursement, and before receiving Reimbursement funds, childcare providers were required to submit receipts and documentation verifying the amount of requested funds had already been spent on allowable expenses in

accordance with the provider's budget. Only expenses incurred after August 1, 2021, were eligible for Reimbursement.

**COUNTS 1–6**
**Wire Fraud (18 U.S.C. § 1343)**

**The Scheme**

20.    Beginning no later than in or around August 2021, and continuing until through at least in or around February 2023, in the Eastern District of Missouri and elsewhere, the defendants,

**LADONNA P. SMITH,**
**DENNIS L. DOUGLAS,**
**DEAUN A. FLOWERS,**
**PRINCESS T. JONES**, and
**TOI P. JONES,**

with intent to defraud, and with others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud DESE, and to obtain money and property from DESE by means of materially false and fraudulent pretenses, representations, and promises, by submitting fraudulent requests for CCRF.

**Manner and Means**

**A. SMITH and DOUGLAS submitted fraudulent RFFs for CCRF on behalf of their own childcare facilities.**

21.    It was part of the scheme that SMITH and DOUGLAS submitted and caused to be submitted fraudulent RFFs to DESE on behalf of childcare facilities registered in their names. In support of these fraudulent requests for funding, and in order to steal CCRF and spend such funds on expenses unrelated to opening or expanding a childcare facility, SMITH and DOUGLAS submitted and caused to be submitted fraudulent documents to DESE that falsely represented that SMITH and DOUGLAS had incurred tens of thousands of dollars of allowable, reimbursable expenses that were related to the opening or expansion of a childcare facility.

6

*Little Precious Angels 2*

22.    It was part of the scheme that, on or about September 14, 2021, SMITH submitted and caused to be submitted a CCRF application to DESE on behalf of Little Precious Angels 2 for an Expansion award. Based on this CCRF application, SMITH caused DESE to approve an Expansion award for Little Precious Angels 2 and to send a notice of award to SMITH via email.

23.    It was further part of the scheme that, on or about November 22, 2021, SMITH sent an email to DESE accepting the Expansion award, confirming that she had fully read the notice of award, and accepting the Terms and Conditions.

24.    It was further part of the scheme that, on or about December 14, 2021, SMITH submitted and caused to be submitted to DESE a fraudulent RFF seeking Reimbursement for, among other expenses, $14,900 in minor remodeling expenses purportedly incurred by Little Precious Angels 2.

25.    It was further part of the scheme that, in support of this fraudulent RFF, SMITH and DOUGLAS submitted and caused to be submitted to DESE an invoice dated August 9, 2021 for purported construction work and reflecting payment in the amount of $14,900. In truth and fact, the invoice was falsified, and SMITH did not make the payment reflected in the invoice.

26.    It was further part of the scheme that, on or about January 5, 2022, as a result of these false and fraudulent documents, SMITH and DOUGLAS caused the State of Missouri to disburse $57,201.81 in CCRF into the Little Precious Angels 2 Account.

27.    It was further part of the scheme that, on or about January 17, 2022, SMITH submitted and caused to be submitted to DESE a second fraudulent RFF seeking Reimbursement of over $43,000 in purported expenses. After SMITH amended the request, the fraudulent RFF specifically requested Reimbursement for the following expenses purportedly incurred by Little

Precious Angels 2:

      a.      $20,970.12 in furniture and equipment;

      b.      $21,728.07 in materials and supplies; and

      c.      $100 in minor remodeling.

28.      It was further part of the scheme that, in support of this fraudulent RFF, SMITH and DOUGLAS submitted and caused to be submitted to DESE fraudulent receipts and documentation purporting to verify that the amount of requested funds had already been spent on allowable expenses, which SMITH and DOUGLAS knew to be false, including the following documents:

      a.      A payment receipt from School Outfitters dated December 17, 2021, reflecting purchases of school supplies and furniture by Little Precious Angels 2 in the amount of $29,306.51. In truth and fact, the payment receipt was falsified, and SMITH did not make the purchases reflected in the payment receipt.

      b.      An invoice dated November 19, 2021, for purported construction work and reflecting payment by Little Precious Angels 2 to J.H. in the amount of $51,700. In truth and fact, the invoice was falsified, and SMITH did not make the payment for construction work reflected in the invoice.

      c.      An invoice from landscaping company F.L. for purported landscaping work and reflecting payment by Little Precious Angels 2 in the amount of $30,684.39 on November 30, 2021. In truth and fact, the invoice was falsified, and SMITH did not make the payment reflected in the invoice.

29.      It was further part of the scheme that, on or about March 8, 2022, as a result of these false and fraudulent documents, SMITH and DOUGLAS caused the State of Missouri to disburse

$42,798.19 in CCRF into the Little Precious Angels 2 Account.

30.    It was further part of the scheme that SMITH used the CCRF for Little Precious Angels 2 on expenses unrelated to expanding a childcare facility, including a $10,000 payment to DOUGLAS as a kickback for helping fraudulently obtain the CCRF, airfare for personal travel, and purchases at high-end department stores and designers such as Saks Fifth Avenue, Neiman Marcus, Dior, and Alexander McQueen.

*Little Precious Angels 3*

31.    It was part of the scheme that, on or about June 16, 2022, SMITH submitted and caused to be submitted a CCRF application to DESE on behalf of Little Precious Angels 3 for a Startup award. Based on this CCRF application, SMITH caused DESE to approve a Startup award for Little Precious Angels 3 and to send a notice of award to SMITH via email.

32.    It was further part of the scheme that, on or about September 5, 2022, SMITH sent an email to DESE accepting the Startup award, confirming that she had fully read the notice of award, and accepting the Terms and Conditions.

33.    It was further part of the scheme that, on or about September 18, 2022, SMITH submitted and caused to be submitted to DESE a fraudulent RFF seeking Reimbursement in the total amount of approximately $127,066.54, including for following expenses purportedly incurred by Little Precious Angels 3:

      a.    $63,938.29 in furniture and equipment;

      b.    $41,494.25 in materials and supplies; and

      c.    $12,000 in minor remodeling.

34.    It was further part of the scheme that, in support of this fraudulent RFF, SMITH and DOUGLAS submitted and caused to be submitted to DESE fraudulent receipts and

9

documentation purporting to verify that the amount of requested funds had already been spent on allowable expenses, which SMITH and DOUGLAS knew to be false, including the following documents:

a. Receipts totaling approximately $84,000 and reflecting SMITH's purchase of the contents of two storage units purportedly owned by J.E. In truth and fact, the receipts were falsified, J.E. did not sell any items to SMITH, the true owner of the contents of the storage units was DOUGLAS, and SMITH did not make the payments reflected in the receipts.

b. An invoice from painting company S.L.P. for purported painting work in the amount of $12,000. In truth and fact, the invoice was falsified, and SMITH did not pay the amount reflected in the invoice to S.L.P.

35. It was further part of the scheme that, on or about February 10, 2023, as a result of these false and fraudulent documents, SMITH and DOUGLAS caused the State of Missouri to disburse $127,066.54 in CCRF into the Little Precious Angels 3 Account.

36. It was further part of the scheme that SMITH subsequently used the CCRF for Little Precious Angels 3 for expenses unrelated to expanding the childcare facility, including transfers to her personal account, payments to DOUGLAS as a kickback for helping fraudulently obtain the CCRF, and purchases at high-end retailers such as Dolce and Gabbana and Gucci.

### *Above and Beyond*

37. It was part of the scheme that, on or about September 15, 2021, DOUGLAS submitted and caused to be submitted a CCRF application to DESE on behalf of Above and Beyond for a Startup award. Based on this CCRF application, DOUGLAS caused DESE to approve a Startup award for Above and Beyond and to send a notice of award to DOUGLAS via

email.

38.    It was further part of the scheme that, on or about November 22, 2021, DOUGLAS sent an email to DESE accepting the Startup award, confirming that he had fully read the notice of award, and accepting the Terms and Conditions.

39.    It was further part of the scheme that, on or about December 14, 2021, DOUGLAS submitted and caused to be submitted to DESE a fraudulent RFF seeking Reimbursement in the total amount of approximately $79,927.08.    Specifically, the fraudulent RFF requested Reimbursement for the following expenses purportedly incurred by Above and Beyond:

  a.    $30,559.81 in furniture and equipment;

  b.    $2,567.27 in materials and supplies;

  c.    $10,500 in salaries and benefits;

  d.    $6,300 in lease and rent; and

  e.    $30,000 in minor remodeling.

40.    It was further part of the scheme that, in support of this fraudulent RFF, SMITH and DOUGLAS submitted and caused to be submitted to DESE fraudulent receipts and documentation purporting to verify that the amount of requested funds had already been spent on allowable expenses, which SMITH and DOUGLAS knew to be false, including the following documents:

  a.    Order confirmations from School Outfitters reflecting purchases by Above and Beyond of school furniture and supplies totaling $30,559.81.  In truth and fact, the dates of purchase on the order confirmations had been altered; the purchases occurred prior to August 1, 2021, meaning they were ineligible for Reimbursement; and DOUGLAS had purchased substantially less than the amount reflected in the altered order confirmations.

11

b.      Order confirmations from Kaplan Early Learning Company reflecting purchases by Above and Beyond of school supplies totaling $2,567.27. In truth and fact, the dates of purchase on the order confirmations had been altered; the purchases occurred prior to August 1, 2021, meaning they were ineligible for Reimbursement; and DOUGLAS had purchased substantially less than the amount reflected in the altered order confirmations.

c.      A lease agreement, which purported to be an agreement for DOUGLAS to lease a property from H.G. and A.W. to be used as a day care facility beginning March 1, 2022, and which purported to bear the signatures of H.G. and A.W. In truth and fact, the lease agreement was fake, and H.G. and A.W. did not sign the agreement.

d.      Rent receipts, reflecting monthly lease payments by DOUGLAS to H.G. between September and October 2021. In truth and fact, the rent receipts were fake, DOUGLAS did not make the rent payments reflected in the receipts, and H.G. did not sign the rent receipts.

41.      It was further part of the scheme that, on or about December 23, 2021, as a result of these false and fraudulent documents, SMITH and DOUGLAS caused the State of Missouri to disburse $79,927.08 in CCRF into the Above and Beyond Account.

42.      It was further part of the scheme that DOUGLAS used the CCRF for Above and Beyond for expenses unrelated to opening a childcare facility, including payments totaling over $16,000 to SMITH as a kickback for helping fraudulently obtain the CCRF, transfers to DOUGLAS's personal bank accounts, and purchases at high-end department stores and designers such as Neiman Marcus, Saks Fifth Avenue, and Louis Vuitton.

**B. SMITH and DOUGLAS attempted to fraudulently obtain CCRF for others by submitting false and fraudulent reimbursement requests.**

43.      It was part of the scheme that SMITH offered to assist others, known and unknown to the Grand Jury, to fraudulently obtain CCRF in their names by submitting false and fraudulent

12

RFFs to DESE in exchange for a portion of CCRF obtained as a result. In support of RFFs, and in order to steal CCRF and spend such funds on expenses unrelated to opening or expanding a childcare facility, SMITH and DOUGLAS submitted and caused to be submitted fraudulent documents to DESE that falsely represented a childcare provider had incurred tens of thousands of dollars of allowable, reimbursable expenses related to the opening of a childcare facility.

*Bright Star Academy*

44.     It was part of the scheme that, on or about September 30, 2021, SMITH and S.P. submitted and caused to be submitted a CCRF application to DESE on behalf of Bright Star Academy for a Startup award. The application included a letter signed by S.P. designating SMITH as the designee for Bright Star Academy, allowing SMITH to correspond with DESE concerning Bright Start Academy's application. Based on this CCRF application SMITH and S.P. caused DESE to approve a Startup award for Bright Star Academy and to send a notice of award via email.

45.     It was further part of the scheme that, on or about January 9, 2022, S.P. sent an email to DESE accepting the Startup award, confirming that he had fully read the notice of award, and accepting the Terms and Conditions.

46.     It was further part of the scheme that, on or about January 29, 2022, SMITH and S.P. submitted and caused to be submitted to DESE a fraudulent RFF seeking Reimbursement in the total amount of approximately $125,000.87, in attempt to fraudulently obtain CCRF and use those funds for expenses unrelated to opening a childcare facility. Specifically, the fraudulent RFF requested Reimbursement for the following expenses purportedly incurred by Bright Star Academy:

    a.    $22,413.27 in furniture and equipment;

    b.    $61,187.60 in salaries and benefits;

    c.    $11,400 in lease and rent; and

    d.    $30,000 in minor remodeling.

47.    It was further part of the scheme that, in support of this RFF, SMITH, DOUGLAS, and S.P. submitted and caused to be submitted to DESE fraudulent receipts and documentation purporting to verify that the amount of requested funds had already been spent on allowable expenses, which SMITH and DOUGLAS knew to be false, including the following documents:

    a.    An order confirmation from School Outfitters reflecting purchases of school furniture and equipment by Bright Star Academy totaling approximately $41,550.27. In truth and fact, Bright Star Academy did not purchase this furniture and equipment. The order confirmation had been altered and falsified from a School Outfitters order confirmation for an order placed by SMITH on behalf of Little Precious Angels 2. The amount of school furniture and equipment was inflated in the altered order confirmation. In addition, the order by SMITH on behalf of Little Precious Angels 2 was later cancelled and never fulfilled.

    b.    A lease agreement, which purported to be an agreement for Bright Star Academy to lease a property from G.D.G. Inc., to be used as a day care facility beginning October 1, 2021, and which purported to bear the signature of R.C. In truth and fact, the lease agreement was fake, and R.C. did not sign the agreement.

    c.    Rent receipts reflecting monthly lease payments by Bright Star Academy to G.D.G. Inc. between October 2021 and February 2022. In truth and fact, the rent receipts were fake, and Bright Star did not make the rent payments reflected in the receipts.

    d.    False and fraudulent payroll reports, reflecting payroll payments from Bright Star Academy to approximately eleven (11) employees between October and December 2021. In truth and fact, the payroll documents were fake, and Bright Star did not pay any

14

employees during that time period.

**C. SMITH and DOUGLAS assisted their co-defendants to steal CCRF by misrepresenting how such funds would be spent and by submitting false and fraudulent receipts and invoices to DESE.**

48.     It was part of the scheme that SMITH and DOUGLAS, knowing such funds could only be used for allowable expenses, offered to assist FLOWERS, P. JONES, and T. JONES in obtaining CCRF for opening childcare facilities in exchange for a portion of the CCRF. SMITH and DOUGLAS misrepresented in RFFs that the CCRF would be used for certain expenses related to opening a childcare facility, when in truth and fact, SMITH and DOUGLAS intended to take a significant portion of the CCRF as payment for submitting the CCRF applications. After obtaining the CCRF from DESE, and in order to steal CCRF and spend such funds on expenses unrelated to opening a childcare facility, the defendants submitted and caused to be submitted false and fraudulent documents to DESE that falsely represented the CCRF had been spent on allowable, reimbursable expenses related to the opening of a childcare facility.

*Totta Tots*

49.     It was part of the scheme that, on or about November 8, 2021, SMITH, FLOWERS, and T. JONES submitted and caused to be submitted a CCRF application to DESE on behalf of Totta Tots for a Startup award. The application included a letter signed by T. JONES designating SMITH as the designee for Totta Tots, allowing SMITH to correspond with DESE concerning Totta Tots' application. Based on this CCRF application, SMITH, FLOWERS, and T. JONES caused DESE to approve a Startup award for Totta Tots and to send a notice of award via email.

50.     It was further part of the scheme that, on or about February 22, 2022, SMITH, T. JONES, and FLOWERS submitted and caused to be submitted to DESE a fraudulent RFF seeking Advanced Payment in the total amount of approximately $129,699.27, including for the following

15

purported expenses related to the opening of a daycare facility:

    a.    $12,344 in furniture and equipment;

    b.    $13,540.47 in materials and supplies;

    c.    $51,314.80 in salaries and benefits; and

    d.    $30,000 in minor remodeling.

51.    It was further part of the scheme that, on or about March 4, 2022, in support of this RFF, SMITH, T. JONES, and FLOWERS submitted and caused to be submitted to DESE a fraudulent list of twelve (12) employees of Totta Tots. In truth and fact, the list of employees was fabricated, Totta Tots did not have employees, and SMITH instead intended to use the CCRF to pay herself for assisting in obtaining the CCRF for Totta Tots.

52.    It was further part of the scheme that, on or about March 7, 2022, T. JONES sent an email to DESE accepting the Startup award, confirming that she had fully read the notice of award, and accepting the Terms and Conditions.

53.    It was further part of the scheme that, on or about March 28, 2022, as a result of the fraudulent RFF, SMITH, FLOWERS, and T. JONES caused the State of Missouri to disburse approximately $129,699 in CCRF into the Totta Tots Bank Account.

54.    It was further part of the scheme that FLOWERS and T. JONES used the CCRF for Totta Tots for personal expenses unrelated to opening a childcare facility as set forth in Totta Tots' RFF, including a $30,000 payment to SMITH as a kickback for helping obtain the CCRF, cash withdrawals, payments and electronic transfers to themselves, personal shopping and food purchases, and payments towards personal bills.

55.    It was further part of the scheme that, between approximately September 2022 and February 2023, SMITH, FLOWERS, and T. JONES submitted and caused to be submitted to

DESE fraudulent receipts and documentation purporting to verify that the CCRF for Totta Tots had been spent on allowable expenses in accordance with Totta Tots's RFF, which SMITH, FLOWERS, and T. JONES knew to be false, including the following documents:

a.      A handwritten invoice from SMITH reflecting Totta Tots had purchased kitchen equipment from Little Precious Angels in the amount of $6,970. In truth and fact, FLOWERS and T. JONES did not purchase equipment from SMITH or Little Precious Angels.

b.      A handwritten invoice and receipts from a construction company B.C.R. for construction work in the amount of $7,193.82. In truth and fact, the invoice and receipts were falsified, and T. JONES and FLOWERS did not pay for construction work from B.C.R.

c.      Forms 1099 reflecting payments to three (3) purported employees of Totta Tots. In truth and fact, the Forms 1099 were falsified, and FLOWERS and T. JONES had used $30,000 of the CCRF for Totta Tots to pay a kickback to SMITH.

d.      An invoice from a construction company C.C.D. for remodeling work in the total amount of $75,900 and reflecting that Totta Tots had paid $27,900 on October 17, 2022. In truth and fact, the invoice was false, and T. JONES and FLOWERS did not pay that amount to C.C.D. for remodeling work.

56.      It was further part of the scheme that, on or about March 3, 2023, after DESE sent Totta Tots a letter demanding repayment of over $100,000 in CCRF for failing to spend the funds within four (4) months on allowable expenses, FLOWERS wrote a $15,000 check to T. JONES and a $11,000 check to herself out of the Totta Tots Bank Account, using the CCRF for Totta Tots.

*Childhood Memories*

57.      It was part of the scheme that, on or about February 9, 2022, DOUGLAS and P. JONES submitted and caused to be submitted a CCRF application to DESE on behalf of Childhood

17

Memories for a Startup award. The application designated DOUGLAS as the designee for Childhood Memories, allowing DOUGLAS to correspond with DESE concerning Childhood Memories' application. Based on this CCRF application, P. JONES and DOUGLAS caused DESE to approve a Startup award for Childhood Memories and to send a notice of award via email.

58.    It was further part of the scheme that, on or about March 7, 2022, P. JONES sent an email to DESE accepting the Startup award, confirming that she had fully read the notice of award, and accepting the Terms and Conditions.

59.    It was further part of the scheme that, on or about June 5, 2022, DOUGLAS and P. JONES submitted and caused to be submitted to DESE a fraudulent RFF seeking Advanced Payment in the total amount of approximately $75,000. Specifically, the RFF requested Advanced Payment for the following purported expenses related to the opening of a daycare facility:

    a.    $30,000 in furniture and equipment;

    b.    $15,000 in salaries and benefits; and

    c.    $30,000 in minor remodeling.

In truth and fact, Childhood Memories did not have employees, and DOUGLAS instead intended to use the CCRF to pay himself for assisting in obtaining the CCRF for Childhood Memories.

60.    It was further part of the scheme that, on or about August 24, 2022, as a result of the fraudulent RFF, DOUGLAS and P. JONES caused the State of Missouri to disburse approximately $75,000 in CCRF into the Childhood Memories Bank Account.

61.    It was further part of the scheme that P. JONES used the CCRF for Childhood Memories for personal expenses unrelated to opening a childcare facilty as set forth in Childhood Memories' RFF, including a $20,000 payment to DOUGLAS as a kickback for helping obtain the CCRF, cash withdrawals, airline tickets, cruise tickets, hotel reservations, and electronic transfers

to herself and other individuals not associated with Childhood Memories.

**Wirings in Furtherance of the Scheme**

62.    On or about the dates set forth below, in the Eastern District of Missouri and elsewhere, the defendant(s) listed below for each count, having devised and intended to devise a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Defendant | Approx. Date | Childcare Provider | Summary |
|---|---|---|---|---|
| 1 | SMITH DOUGLAS | January 17, 2022 | Little Precious Angels 2 | A wire communication from the state of Missouri to Google servers located outside the state of Missouri, consisting of an email to DESE submitting a fraudulent RFF for Little Precious Angels 2 and fraudulent receipts and invoices. |
| 2 | SMITH DOUGLAS | September 18, 2022 | Little Precious Angels 3 | A wire communication from the state of Missouri to Google servers located outside the state of Missouri, consisting of an email to DESE submitting a fraudulent RFF for Little Precious Angels 3 and fraudulent receipts and invoices. |
| 3 | SMITH DOUGLAS | January 29, 2022 | Bright Star Academy | A wire communication from the state of Missouri to Google servers located outside the state of Missouri, consisting of an email to DESE submitting a fraudulent RFF for Bright Star Academy and fraudulent receipts and invoices. |
| 4 | SMITH FLOWERS T. JONES | February 22, 2022 | Totta Tots | A wire communication from the state of Missouri to Google servers located outside the state of Missouri, consisting of an email to DESE submitting a fraudulent RFF for Totta Tots. |

19

| 5 | SMITH DOUGLAS | December 14, 2021 | Above and Beyond | A wire communication from the state of Missouri to Google servers located outside the state of Missouri, consisting of an email to DESE submitting a fraudulent RFF for Above and Beyond. |
| 6 | DOUGLAS P. JONES | June 5, 2022 | Childhood Memories | A wire communication from the state of Missouri to Google servers located outside the state of Missouri, consisting of an email to DESE submitting a fraudulent RFF for Childhood Memories. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 7–8
### Theft of Government Property (18 U.S.C. § 641)

63.    The above paragraphs are realleged and incorporated by reference as if fully set forth herein.

64.    On or about the dates set forth below, in the Eastern District of Missouri and elsewhere, the defendant(s) listed below for each count, willfully and knowingly stole, purloined, and converted to his or her use or the use of another money and property of the United States of a value exceeding $1,000, namely, a CCRF award for a childcare provider as described below for each count, each award constituting a separate count:

| Count | Defendant | Approx. Date | Childcare Provider | Award Amount |
|---|---|---|---|---|
| 7 | FLOWERS T. JONES | March 28, 2022 | Totta Tots | $129,699 |
| 8 | P. JONES | August 24, 2022 | Childhood Memories | $75,000 |

All in violation of Title 18, United States Code, Sections 641.

## COUNTS 9–11
### Aggravated Identity Theft (18 U.S.C. § 1028A)

65.    The above paragraphs are realleged and incorporated by reference as if fully set

forth herein.

66.     On or about the dates set forth below, in the Eastern District of Missouri and elsewhere, the defendant listed below for each count, knowingly possessed and used, without lawful authority, a means of identification of another person, described below for each count, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), namely, wire fraud, in violation of Title 18, United States Code, Sections 1343, knowing that the means of identification belonged to another actual person, each means of identification constituting a separate count:

| Count | Defendant | Approx. Date | Summary |
|-------|-----------|--------------|---------|
| 9 | SMITH | October 24, 2022 | The name and signature of J.E. on false receipts for the purported purchase of contents of storage units for Little Precious Angels 3. |
| 10 | SMITH | December 13, 2021 | The name and signature of R.C. on a false lease agreement for a purported daycare facility for Bright Star Academy. |
| 11 | DOUGLAS | March 1, 2022 | The names and signatures of H.G. and A.W. on a false lease agreement for a purported daycare facility for Above and Beyond. |

### FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 18, United State Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 1343 and 641, as set forth in Counts 1 through 8, the Defendant(s) shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).

2.      Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation(s).

21

3.      If any of the property described above, as a result of any act or omission of the

Defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without

difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

THOMAS C. ALBUS
United States Attorney

_____
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney